**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY RAFAEL COLON-** | : | |
| **SANTIAGO,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-00966** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **PRIMECARE, INC., et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the Court are pro se Plaintiff Jeffrey Rafael Colon-Santiago

("Plaintiff")'s application for leave to proceed in forma pauperis ("IFP Application") and

complaint in which he asserts claims under 42 U.S.C. § 1983 and Pennsylvania state law against

the warden of a county jail, the medical provider for the jail, and a nurse working at the jail.  The

Court has reviewed the IFP Application and screened the complaint pursuant to 28 U.S.C. §§

1915(e)(2)(B) and 1915A(a).  For the reasons stated below, the Court will grant the IFP

Application, dismiss the complaint, and grant Plaintiff leave to file an amended complaint.

**I.      BACKGROUND**

Plaintiff commenced this action by filing a complaint and the IFP Application, both of

which the Clerk of Court docketed on May 30, 2025.  (Doc. Nos. 1, 2.)  Unfortunately, Plaintiff

did not submit a certified prisoner trust fund account statement along with his IFP Application,

as required by 28 U.S.C. § 1915(a)(2).[1]  Consequently, an Administrative Order issued requiring

---

[1]  Section 1915(a)(2) states as follows:

A prisoner seeking to bring a civil action . . . without prepayment of fees or security
therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a
certified copy of the trust fund account statement (or institutional equivalent) for
the prisoner for the 6-month period immediately preceding the filing of the

submission of Plaintiff's certified account statement.  (Doc. No. 5.)  Plaintiff's account statement was docketed with the Clerk of Court on June 6, 2025.  (Doc. No. 6.)

Regarding the complaint, Plaintiff, who is currently incarcerated in the York County Prison ("YCP"), names as Defendants: (1) Primecare, Inc. ("Primecare"), YCP's medical provider; (2) the Warden of YCP ("Warden"); and (3) Ashley Ott ("Ott"), a registered nurse working for Primecare at YCP.  (Doc. No. 1 at 1–3.)  Plaintiff alleges that on January 2, 2025, he was "seen by [the] M.A.T. Counselor [at YCP] to receive a Sublocade injection."[2]  See (id. at 4). The following day, Ott administered a Sublocade injection to Plaintiff, which resulted in a "severe burn, a hole in [his] stomach, and a lengthy recovery, due to [Ott] not properly preparing [the] medication" and incorrectly placing it in him.  See (id.).  Since then, an outside medical provider, UPMC, has been treating the "site of [Plaintiff's] injury."  See (id.).  Plaintiff alleges that "due to [Primecare] staff at [YCP] not following the [doctor's] orders [the site] became infected and opened a second site."  See (id.).

Based on these allegations, Plaintiff alleges claims for (1) "gross negligence" under the Fourteenth Amendment to the United States Constitution; (2) failure to train/municipal liability under Section 1983; (3) violations of his right to be free from cruel and unusual punishment under the Eighth Amendment; (4) excessive force in violation of the Eighth Amendment; (5) medical malpractice/negligence; and (6) failure to supervise.  See (id. at 5.)  For relief, Plaintiff

---

complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined.

See 28 U.S.C. § 1915(a)(2).

[2]  Sublocade "is used to treat adults with moderate to severe addition (dependence) to opioid drugs."  See Sublocade Injection, https://www.drugs.com/sublocade.html (last visited June 6, 2025).  In addition, "M.A.T." stands for "Medication-Assisted Treatment."  See Nixon v. United States, No. 25-cv-00488, 2025 WL 1019073, at *1 (M.D. Pa. Apr. 4, 2025).

seeks compensatory damages, punitive damages, a declaratory judgment, and "a lean [sic]

against [Ott] until a verdict is reached for judgment."  See (id.).

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case

"without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that

includes a statement of all assets such prisoner possesses that the person is unable to pay such

fees or give security therefor."[3]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal
> courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338
> (1989).  Specifically, Congress enacted the statute to ensure that administrative
> court costs and filing fees, both of which must be paid by everyone else who files
> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.
> [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
> 1915(a) allows a litigant to commence a civil or criminal action in federal court in
> forma pauperis by filing in good faith an affidavit stating, among other things, that
> [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct.
> 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a

showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals

has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely

destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900,

238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours

& Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to

---

[3]  While the Court recognizes that Plaintiff is incarcerated, "[t]he reference to prisoners in §
1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons,
not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008)
(unpublished).

show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

**B.     The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696

F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when

5

dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

III.    **DISCUSSION**

A.    **The IFP Application**

After reviewing the IFP Application as well as Plaintiff's certified prison trust fund account statement, it appears that Plaintiff is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis in this action.[4]

B.    **Screening of Plaintiff's Claims**

1.    **Section 1983 Claims Against the Warden**[5]

Other than naming the Warden as a Defendant in the caption and body of the complaint, Plaintiff fails to allege any facts indicating how the Warden violated his constitutional rights. This failure alone warrants dismissal of Plaintiff's claims against the Warden because in general, a plaintiff asserting a Section 1983 claim must allege that each defendant was personally involved in the act or acts that they claim violated their federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

---

[4]  However, because Plaintiff is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. See 28 U.S.C. § 1915(b).

[5]  The Court does not construe the complaint to contain any state-law claim against the Warden.

Additionally, the Warden is a supervisory official at YCP; as such, Plaintiff may not rely solely on respondeat superior to establish Section 1983 liability, see Rode, 845 F.2d at 1207 (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)). Instead, if Plaintiff seeks to hold a supervisor such as the Warden liable for unconstitutional acts by their subordinates, Plaintiff's allegations must satisfy one of two (2) theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—Plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was

> indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).  For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

In this case, Plaintiff does not include allegations in the complaint which would state a plausible Section 1983 claim against the Warden under either theory of supervisory liability. Accordingly, the Court will dismiss Plaintiff's Section 1983 claims against the Warden.

## 2. Section 1983 Claims Against Primecare

Plaintiff appears to be alleging that Primecare was deliberately indifferent to his serious

medical needs in violation of the Eighth and Fourteenth Amendments when it allegedly failed to

train and supervise Ott.  (Doc. No. 1 at 4–5.)  Although Plaintiff references the Eighth and

Fourteenth Amendments in his complaint, only the Fourteenth Amendment applies to these

claims because he was a pretrial detainee at YCP at the time of the events alleged in the

complaint.[6]  (Doc. No. 1 at 2, 4.)  See Thomas v City of Harrisburg, 88 F.4th 275, 281 n.23 (3d

Cir. 2023) (explaining that although "the Eighth Amendment protects a prisoner's serious

medical needs," the Fourteenth Amendment applied to plaintiff pretrial detainee's deliberate

indifference to serious medical needs claim (citing Estelle, 429 U.S. at 103–04; Natale v.

Camden County Corr. Facility, 318 F.3d 575, 581–82 (3d Cir. 2003))), cert. denied sub nom.

Foose v. Thomas, 145 S. Ct. 141 (2024).  In addressing this claim under the Fourteenth

Amendment, the Court "appl[ies] the same standard used to evaluate [deliberate indifference]

---

[6] Plaintiff checks the boxes in his complaint indicating that he is both a pretrial detainee and a
convicted and sentenced federal prisoner.  (Doc. No. 1 at 2.)  Nevertheless, the Court located
what appears to be the docket sheet for Plaintiff's criminal case in the York County Court of
Common Pleas on the Unified Judicial System of Pennsylvania Web Portal,
https://ujsportal.pacourts.us/CaseSearch (last visited June 6, 2025).  See Commonwealth v.
Colon-Santiago, No. CP-67-CR-0002185-2021 (York Cnty. Ct. Com. Pl. filed May 13, 2021)
("Docket").  This docket is a public record of which this Court can take judicial notice.  See
Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court
"may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F.
Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).  According to the
docket sheet, Plaintiff has several unresolved criminal charges in York County.  See Docket.

Additionally, Plaintiff was sentenced to one hundred and eighty-eight (188) months
imprisonment by the Honorable Keli M. Neary of this Court on April 22, 2025.  See United
States v. Colon-Santiago, No. 21-cr-00190 (M.D. Pa. filed July 14, 2021), ECF No. 96.
Nonetheless, even though Plaintiff has been convicted and sentenced in federal court, he is a
pretrial detainee for purposes of the instant case because it appears that he is incarcerated in YCP
until his state criminal charges are resolved.  Thus, the Court will dismiss any Eighth
Amendment claims asserted against Primecare and the other Defendants.

claims brought under the Eighth Amendment." See id. (citing Natale, 318 F.3d at 581–82); see also Moore v. Luffey, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (unpublished) (evaluating deliberate indifference to serious medical needs claim by pretrial detainee under Eighth Amendment standard, declining to address whether new standard applies to these types of claims by pretrial detainees, and discussing similarity of standards under Eighth and Fourteenth Amendments).

In general, to state a plausible constitutional claim based on the failure to provide adequate medical treatment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to her serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat

can be expected to lead to substantial and unnecessary suffering." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

In this case, Plaintiff alleges that Primecare is the medical provider for the YCP and has failed to properly train or treat Ott. Because Primecare, a non-government entity, allegedly provides medical services at YCP, it is considered to act under color of state law for purposes of section 1983. See Curdo v. County of Chester, No. 24-cv-00132, 2024 WL 3445005, at *13 n.140 (E.D. Pa. July 17, 2024) ("Private entities, like PrimeCare Medical, Inc., contracting with municipalities, like [Chester] County, to provide services to prison inmates are state actors for purposes of section 1983 liability." (citing West, 487 U.S. at 53–58)); Roth v. PrimeCare, No. 18-cv-05010, 2019 WL 2745789, at *2 n.12 (E.D. Pa. June 27, 2019) ("The PrimeCare Defendants do not contest they are state actors, conceding they contract with Montgomery County to provide medical services to inmates incarcerated at the Montgomery County prison."); see also Natale, 318 F.3d at 583–84 (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of Section 1983).

Assuming that private healthcare companies like Primecare, who contract with county jails to provide medical services to incarcerated individuals, constitute "persons" amenable to suit under Section 1983,[7] they "cannot be held responsible for the acts of [their] employees under

---

[7] Although Primecare acts under color of state law when it provides contracted medical services to a county jail, other Judges in this District have nonetheless concluded that medical providers like Primecare are not proper defendants under Section 1983 because they are not "person[s]" subject to Section 1983 liability. See, e.g., Kenyon v. Gutierrez, No. 24-cv-00426, 2024 WL 3605962, at *8 & n.93 (M.D. Pa. July 30, 2024) (Brann, C.J.) ("Only 'persons' are subject to suit under Section 1983, and entities such as prisons, medical departments, or private medical companies generally do not qualify as 'persons' for purposes of Section 1983." (footnote omitted)); Ealy v. Schell, No. 24-cv-00126, 2024 WL 1533666, at *4 (M.D. Pa. Apr. 9, 2024) (Munley, J.) (determining that Primecare, which was providing medical services to a county jail, was not a "person" amenable to suit under Section 1983); Hasara v. Buchannon, No. 22-cv-01149, 2023 WL 35326, at *1 n.1 (M.D. Pa. Jan. 4, 2023) (Rambo, J.) (noting that pro se

a theory of respondeat superior or vicarious liability." See Natale, 318 F.3d at 583.  Instead, a plaintiff must allege that the private healthcare company violated their constitutional rights because of a custom or policy that it adopted.  See Cephas v. George W. Hill Corr. Facility, No. 09-cv-06014, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010) (explaining that pro se prisoner plaintiff seeking to assert claim against private healthcare company providing medical services to county jail must allege that institutional policy or custom caused violation of plaintiff's rights; dismissing complaint because it did not contain any such allegations); see also Natale, 318 F.3d at 583 (analyzing section 1983 claim against private health care provider under municipal liability standard established in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate

---

plaintiff sued Primecare, and pointing out that Primecare "was dismissed pursuant to 28 U.S.C. § 1915A(b)(1) because it is not a 'person' under Section 1983"); Stankowski v. Farley, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (Munley, J.) (concluding Primecare was not a "person" subject to suit under Section 1983).  This conclusion appears to be based on the United States Supreme Court's decision holding that state agencies are not "persons" subject to suit under Section 1983, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 64–65, 71 (1989), and Third Circuit decisions concluding that state prison medical departments and county jails are also not "persons" amenable to suit under Section 1983.  See, e.g., Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that New Jersey Prison Medical Department, a state agency, "may not be sued under [Section] 1983 since it is not a person); Lenhart v. Pennsylvania, 528 F. App'x 111, 114 (3d Cir. 2013) (unpublished) ("[A]s the District Court noted, Westmoreland County Prison is not a person capable of being sued within the meaning of § 1983." (citations omitted)).

cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." See id. (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose municipal liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Bielevicz, 915 F.2d at 850 (explaining that in both methods to obtain liability under Monell, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom"). The plaintiff "must [also] identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. See McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

> In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." [Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 417 (1997)] (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. at 417–18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390[ (1989)]); see also Berg[ v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

See Natale, 318 F.3d at 584 (third alteration in original) (internal footnote omitted).

Here, Plaintiff does not allege any facts demonstrating an unconstitutional policy or custom by Primecare that would potentially establish a plausible Section 1983 suit against it. Therefore, the Court will dismiss his Section 1983 deliberate indifference to serious medical needs claims for failure to train and supervise against Primecare for the failure to state a claim.

### 3.    Section 1983 claims against Ott

The Court understands Plaintiff to be claiming that Ott was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment and used excessive force against him in violation of the Eighth Amendment. The Court will address each claim in turn.

### a.    Deliberate Indifference to Serious Medical Needs

Plaintiff has failed to plausibly allege that Ott was deliberately indifferent to his serious medical needs. In the first instance, his factual allegations do not plausibly show that Ott knew of and disregarded an excessive risk to his health or safety when she administered the Sublocade injection. See Farmer, 511 U.S. at 837. Moreover, to state a plausible deliberate indifference claim against Ott, Plaintiff has to allege that Ott either (1) knew of his "need for medical treatment but intentionally refuse[d] to provide it," (2) "delay[ed] necessary medical treatment based on a non-medical reason," or (3) "prevent[ed] a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197. Plaintiff includes no such allegations in his complaint, namely, he does not allege that Ott refused to provide treatment, prevented him from receiving treatment, or delayed necessary treatment. Instead, his allegations constitute, at best, a claim that Ott was negligent when she administered the Sublocade injection on January 3rd, and such a negligence claim is insufficient to establish a constitutional violation. See Spruill, 372 F.3d at 235 (explaining that "[a]llegations of medical malpractice are not

sufficient to establish a [c]onstitutional violation").  Therefore, the Court will dismiss Plaintiff's

deliberate indifference to serious medical needs claim against Ott.

### b.    Excessive Force

Similar to Plaintiff's deliberate indifference and municipal liability claims, the Due

Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment

Clause of the Eighth Amendment, governs his excessive force claim against Ott.  See Wharton v.

Danberg, 854 F.3d 234, 247 (3d Cir. 2017) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16

(1979)).  Pretrial detainees are entitled to at least as much protection from excessive force as

prisoners who have been convicted of a crime.  See Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir.

2018) (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).  However, unlike

prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual

punishment, pretrial detainees "cannot be punished at all under the Due Process Clause."  See

Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell, 441 U.S. at 535).  Thus,

pretrial detainees may not be subjected to "excessive force that amounts to punishment."  See

Jacobs v. Cumberland County, 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490

U.S. 386, 395 n.10 (1989)).

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to

establish both an objective element and a subjective element to prove excessive force, excessive

force claims under the Fourteenth Amendment are based exclusively on an objective-

reasonableness standard.  See id. (citing Kingsley v. Hendrickson, 576 U.S. 389, 396–400

(2015)).  Therefore, a pretrial detainee seeking to establish that the use of force was excessive

"must show only that the force purposely or knowingly used against him was objectively

unreasonable."  See id. (citing Kingsley, 576 U.S. at 396–97).  A plaintiff can establish that the

force used was excessive if they show that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose."  See id. (quoting Bell, 441 U.S. at 561).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment.  See Kingsley, 576 U.S. at 397 (citing County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)).  Instead, courts and juries must look to the particular facts and circumstances of the case, including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

See id. (citing Graham, 490 U.S. at 396).[8]  These facts and circumstances should be considered "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  See id.  This consideration "adequately protects an officer who acts in good faith," insofar as it recognizes that "[r]unning a prison is an inordinately difficult undertaking, . . . and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face."  See id. at 399 (internal quotation marks and citations omitted).  In addition, "a court must take account of the legitimate interests in managing a jail, acknowledging as part

---

[8]  The Supreme Court explained that it did "not consider this list to be exclusive."  See id.  Instead, the Court "mention[ed] these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force."  See id.

In addition, the Court recognizes that most of these considerations are applicable only when examining a plaintiff's excessive force claim against corrections officials.  Nevertheless, the Court recites those considerations here for sake of completeness.

of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." See id. at 399–400.

Applying this standard for Fourteenth Amendment excessive force claims to the allegations in the complaint, Plaintiff has failed to allege a plausible excessive force claim against Ott.  He has not averred any facts that would plausibly show that Ott's administration of his Sublocade injection was not rationally related to a legitimate nonpunitive governmental purpose or that the force used was excessive in relation to that purpose.  Instead, Plaintiff's allegations sound only in negligence and are insufficient to state a plausible excessive force claim.  Accordingly, the Court will dismiss Plaintiff's excessive force claim against Ott.

### 4.    State-Law Medical Malpractice/Negligence Claims Against Primecare and Ott

The Court understands Plaintiff to assert state-law medical malpractice claims against Primecare and Ott.[9]  However, because Plaintiff fails to allege a plausible federal claim against any Defendant, the Court declines to exercise supplemental jurisdiction over his state-law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .").  As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.  Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

---

[9]  "Pennsylvania law permits negligence claims against medical corporations for medical malpractice, Thompson v. Nason, 591 A.2d 703, 708 (Pa. 1991), and vicarious liability, Valles v. Albert Einstein Med. Ctr., 758 A.2d 1238, 1244 (Pa. Super. 2000)."  Kinney v. County of Berks, No. 22-cv-02566, 2025 WL 270055, at *17 (E.D. Pa. Jan. 21, 2025).

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966).  Here, the Court finds no

basis to retain supplemental jurisdiction over any remaining state-law claims.

   The Court also notes that there does not appear to be an independent basis for subject-

matter jurisdiction over Plaintiff's state-law claims under the diversity jurisdiction statute, 28

U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States."  See 28 U.S.C. § 1332(a)(1).  Section 1332(a) requires

"'complete diversity between all plaintiffs and all defendants,' even though only minimal

diversity is constitutionally required. This means that, unless there is some other basis for

jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  See Lincoln

Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015) (quoting Lincoln Prop. Co. v.

Roche, 546 U.S. 81, 89 (2005) and Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419

(3d Cir. 2010) (internal footnotes omitted)).

   For purposes of determining whether parties are completely diverse, an individual is a

citizen of the state where the individual is domiciled, meaning the state where the individual is

physically present and intends to remain.  See Washington v. Hovensa LLC, 652 F.3d 340, 344

(3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or

territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). In

this case, Plaintiff alleges only that he is incarcerated in Pennsylvania and the individual

Defendants work or operate out of YCP.[10]  (Doc. No. 1 at 1, 2.)  Therefore, at least based on the

---

[10]  Although Plaintiff is currently incarcerated at YCP, his domicile "before his imprisonment
presumptively remains his domicile during his imprisonment.  That presumption, however, may
be rebutted by showing a bona fide intent to remain in the state of incarceration on release."  See
Pierro v. Kugel, 386 F. App'x 308, 309 (3d Cir. 2010) (unpublished) (citations omitted); see also

allegations in the complaint, the Court cannot conclude that the parties are completely diverse for purposes of Section 1332(a).[11]

### C.      Leave to Amend

Having determined that Plaintiff's claims against Defendants are subject to dismissal, the Court turns to whether to grant him leave to file an amended complaint.  Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

---

Robinson v. Temple Univ. Health Servs., 506 F. App'x 112, 115 (3d Cir. 2012) (unpublished) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the state of which he was a citizen before his imprisonment," and that other circuits "follow a rebuttable presumption model; those courts presume that a prisoner does not change his domicile by being incarcerated in a new state, but they permit him to rebut that presumption").

[11]  Because Primecare is a corporation, Plaintiff would have to properly allege its citizenship by identifying its place incorporation and its principal place of business.  See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

Based on the analysis above, the Court will grant Plaintiff leave to file an amended complaint because it is unclear at this time whether any amendment would be futile.  Should Plaintiff file an amended complaint, he should clarify whether he is currently in YCP awaiting disposition of state criminal charges, i.e., a pretrial detainee.  In addition, the Court recommends that Plaintiff include allegations identifying his domicile as well as Defendants' citizenship so the Court can determine whether there is an independent basis for jurisdiction over his state-law claims.[12]  Overall, Plaintiff should consider the Court's reasons for dismissing his federal claims if he chooses to file an amended complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the IFP Application and dismiss the complaint without prejudice.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[12]  The Court is making this recommendation because the allegations in this case appear to constitute only a possible claim for medical malpractice and not any federal claim.  If Plaintiff files an amended complaint that includes federal claims, and those claims are again dismissed, these citizenship allegations would permit the Court to analyze whether there is complete diversity among the parties without requiring further Order of Court.

21